Good morning, Your Honors. Catherine Young from the Federal Public Defender's Office for Appellant Josue Cruz-Perez. I would like to reserve three minutes of my time, Your Honor. And may it please the Court, before turning to the government's 28J letter on the issue of reasonableness, I'd like to point out that this is a case where there were such egregious errors that the Court doesn't even need to reach reasonableness to reverse. In this case, the Court sentenced Mr. Cruz-Perez to 46 months for illegal reentry, returning to the country where he had lived since he was 13 and where his family lived. And the Court's the the Court recited the statutory factors, but the only fact specific to Mr. Cruz-Perez on which the Court relied was the Court's finding that Mr. Cruz-Perez has regularly, during one period of his life, committed acts of violence while in this country. And the government's brief reinforces this point by repeatedly citing that same language by the district court. Now we know, based on the request for judicial notice that we've submitted, that in fact that was false. The PSR misrepresented two of Mr. Cruz-Perez's prior convictions, and he did not have regular acts of violence. Well, on that point, you know, obviously, you know, defense counsel and the defendant can't sit there like a potted plant. And that when they were discussing all of these, I think in the PSR and going through it, it doesn't seem that there was any, that no one bothered to point any of that out if there was a problem. And even assuming that what you've stated, some of it might have been a problem, how would that have changed his offense level? It would not have changed the offense level, Your Honor, because that was based upon the amount of time that he was given for the convictions. But the fact that the Court specifically relied upon the claim that he had committed acts of violence regularly, when in fact that was not true, based upon the judgments that we've submitted to this Court and asked this Court to look at, that was not true. They were not acts of violence. There was one aggravated assault, but the other two assaults, one was a petty disorderly person's offense, and the other one was a hindering prosecution based upon the actual judgments, and the PSR had simply misrepresented those convictions. And so the PSR, as we've shown in our request for judicial notice, simply misrepresented those convictions. It's clear from the judgments themselves, the certified copies we've submitted to the Court, that the PSR was simply wrong about those convictions, and the government's brief admits as much. And the fact that the convictions existed, correct, but it was the characterizations of them is what you're – what you have difficulty with. It was actually what he was convicted of. And in fact, all of them were gang altercations in which Mr. Cruz Perez might have been present, but there's no indication of what role he actually played. And so that's a significant fact. When he's convicted of aggravated assault or acts of violence, he may have been there. In one case, there were 10 to 15 other people there. Nobody knows, and the PSR doesn't tell us exactly what he did. Well, now, was the stabbing one wrong? The stabbing one, I think that is the aggravated assault. But the important thing to remember about that case is that it's a gang fight. There's 10 to 15 people there. We don't know what Mr. Cruz Perez did in that case. The PSR doesn't tell us. All that we know about that case is that when the State court, who presumably knew something about what role he individually played in that offense, the State court 8 years ago gave him 6 months for that offense. So the State court presumably felt that he wasn't – there's no indication that he was the person who wielded the knife. There's no indication of what he did. Presumably, if he had been the one who wielded the knife, he wouldn't have gotten 6 months for it. So I think the presumption is that he wasn't the person who was responsible for the stabbing. All we know from the PSR is that there's 10 to 15 people involved in a gang altercation, and Mr. Cruz Perez gets 6 months for some unknown involvement in that altercation. Well, in this case, the – go ahead, Judge Fletcher. We have the fact of a conviction for aggravated assault. I don't think we look beyond that, do we? Well, I think, actually, in this case, after Booker, we can look behind it. We don't necessarily look behind it in terms of the guideline sentence. But after Booker, we're required to look at the reasonableness of it. And if we look at the effect that one 8-year-old conviction, for which he got 6 months in State court, had on his sentence, it actually represented 45 months of a 46-month sentence, because it accounted for a 16-level enhancement in the offense level. It gave him two points in his criminal history category, so that put him into additional criminal history category. So he got 45 months for an 8-year-old offense, for which the State court gave him a 6-month sentence. And we don't know from the PSR exactly what happened at that, what exactly he individually did in that offense. So after Booker, we can ask ourselves, is it reasonable, 8 years after he's got a completely clean record, to sentence him to 45 months in custody for an 8-year-old offense for which the State court, who presumably knew what role he played in that offense, only gave him 6 months? I think after Booker, we can make that analysis. Even though the sentencing guideline range was correctly calculated, after Booker, we can ask ourselves, is it reasonable? I would like to ask you a policy question on the reasonableness inquiry under Booker. The government is urging this Court to find that when the sentence is within the statutory guidelines, that it's presumptively reasonable. Why do you think that that's wrong, and why would you not want the Court to go there? Well, I think, first of all, this Court certainly hasn't held it. I mean, there was a footnote in the Guerrero case that was withdrawn. And but I think more importantly, in the Manyweather case, it emphasized, as many other circuits and district court cases across the country have held, that in fact, the sentencing guidelines are often in tension, if not in direct conflict, with the remaining 3553 factors. Because in the sentencing guidelines, there are a number of factors that the sentencing guidelines explicitly do not. I guess as a practical matter, just in terms of a judge sentencing people, you're the defense attorney, they're the prosecutor. You know, why are you disadvantaged by a rule that says a sentence within the guidelines is presumptively reasonable? Because the sentencing guidelines only take into consideration the aggravating factors. They don't allow consideration of mitigating factors. And as the Court in Manyweather pointed out, there's a number of mitigating factors, like family ties and responsibilities, employment record. Well, I guess, but a presumption can be rebutted. So you could put that evidence on. But are you feeling because it's a presumption in the first place that you're climbing up a steeper hill or? Well, I think that's certainly true. I mean, especially in this case. If you look at that. I'm just trying to understand why they want it and why you wouldn't want it. Well, I think because a presumption, I think a lot of courts don't look beyond that presumption. And I think we have, unfortunately, in this case, there was certainly a de facto presumption, it seems to me, because there's an enormous amount of mitigation which wasn't considered by the district court. It wasn't even addressed in the district court sentence. But the problem with a presumption, especially when you've got a guideline that only consider aggravating and don't consider mitigating. And as the Court in Manyweather recognized, there's an enormous amount of mitigating factors that in an individual case you need to consider under 3553A. And when you've got a presumption, often the courts don't look beyond it. And it's unfair to have a presumption which says we will presume that the aggravating factors are reasonable, but the defendant has to prove that all the mitigating factors are reasonable. All right. That's – I understand that. Do you want to reserve the balance of your time? Yes, thank you. Okay. Thank you. Good morning. Good morning. May it please the Court. My name is Shannon Ryan. Excuse me. I represent the United States. Defendant raises three challenges to the district court sentence in this case. First, that the sentence was unreasonable under all of the factors set forth in Section 3553A. Second, that the district court relied on errors in the presentence report in sentencing defendant. And third, that the judgment and commitment order does not comport with the court's oral pronouncement of sentence. And I'd like to address the second claim first, Your Honors, and that is whether errors in the presentence report influence the court's sentence in this case. And first, I'd like to address what those errors are and then examine what impact, if any, they may have had on defendant's sentence. With regard to what the errors are, the record is clear. There are three prior offenses that defendant sustained. Defendant challenges only the first and the second prior offenses. With regard to the first prior offense, which was a conviction for simple assault, defendant does not challenge that he was convicted of simple assault. He does not challenge the time that he received, and he does not challenge any of the facts set forth in the presentence report. He did not challenge that before the district court. He does not challenge it here. The only challenge defendant makes to the first conviction is that it should have more properly been characterized as a disorderly person's offense. In other words, that additional fact under New Jersey law should have been set forth in the presentence report. So that is simply an error of omission. With regard to the second conviction, defendant does not challenge that he sustained a conviction. He does not challenge the amount of time he received for that conviction. He does not challenge, and he did not challenge before the district court, any of the facts set forth underlying that conviction. The challenge to that second conviction is that the presentence report reflects that it was a conviction upon guilty plea for aggravated assault. And in fact, what the court records show is that defendant entered a guilty plea pursuant to a plea agreement to the charge of hindering prosecution. So that conviction is improperly labeled in the presentence report. What defendant does not challenge, and this is important because it gives both this court and it gave the district court a more complete view of defendant's criminal history. What defendant does not challenge, in addition to the fact that he sustained three criminal convictions, is he does not challenge his criminal history category, that he's in a criminal history category three, and that all of his criminal history points, including the criminal history points for each individual conviction, were properly calculated. Defendant does not challenge. So even if we corrected the errors, would he still be in the same category? Yes. And there's no dispute by the defendant, Your Honor, that defendant's guidelines calculations would remain exactly the same. And because the district court selected a sentence at the lowest end of the applicable guidelines, defendant could not receive a different sentence, except were he to argue perhaps that some departure based on overstatement of criminal history or other thing of that nature were applicable. Well, apparently the government thought that he should get 30 months, and the court gave him 46 months, right? So why isn't the government's position reasonable now as opposed to the court's position? The government's position at sentencing, Your Honor, was that defendant should receive 46 months. The government sought the sentence that the district court imposed. The 30-month sentence, Your Honor, comes from a plea offer that the government extended pre-indictment to defendant. It was pursuant to the government's fast-track program, a program which this court has approved in Ben Willis-Rodriguez and other prior authorities. And pursuant to that program, defendant was offered an opportunity to plead to two lesser charges of violating Section 1325, illegal reentry. So what defendant asked this court to do, and what defendant asked the district court to do, and the district court declined to do it, what defendant asked this court to do is to say that the district court should have considered a plea offer by the government that was rejected, that the court should consider the government's 1326 charge when the initial offer was rejected, and impose the sentence based on the 1325 charge rather than the offense of conviction. And those the government submits are simply not appropriate inquiries for the court. And the district court recognized that. That argument, Your Honor, regarding the 30-month fast-tracked offer was made before the district court. It was fully vetted, and the district court rejected it in imposing the 46-month sentence. Let me ask you this. I want to kind of ask you the flip side of what I asked counsel for the appellant. The government's encouraging this court to find that if the sentence was within the guidelines, that it's presumptively reasonable. Tell me why that's important to the government, but then also tell me why if the guidelines are only advisory now, if we make being within the guidelines presumptively reasonable, are we pushing them back closer to being mandatory? Your Honor, that is important for the government, and it is not tantamount to pushing the guidelines into the realm where they are mandatory again for several reasons. First of all, the guidelines, and Booker expressly acknowledges this, the guidelines are the appropriate starting point for computing a defendant's sentence, and more importantly, the guidelines take into account many factors which Congress has determined are appropriate to consider in sentencing an individual. Contrary to the defense position, the government submits that the guidelines do take into account appropriate aggravating and mitigating factors. For example, one's role in the offense, one can receive fines, one can receive a higher sentence based on a mitigating role or, excuse me, based on an aggravating role or a lower sentence based on a mitigating role. With regard to criminal history, a defendant can be sentenced along a range, depending upon when, whether one's criminal history is lower or higher. And so the guidelines take into account many factors which Congress has determined are appropriate in sentencing an individual, both mitigating and aggravating The guidelines consider other factors which are set forth in 3553A, such as finding parity among different individuals who are convicted of similar offenses, things of that nature. And giving the guidelines a presumption of reasonableness will not deny review for defendants who allege that errors have been made. It will simply be a starting point that gives appropriate deference to the guidelines which act as a burden that's not already there. It does not shift a burden that's not already there. Prior to Booker, when the guidelines were mandatory, defendant had a much higher burden. And so it's a new question what the appropriate levels of deference are to be given at this stage, now that the guidelines are advisory. And so the government submits that it's not burden shifting so much as applying the appropriate level of deference. If it's a rebuttable presumption, the person who has the burden of rebutting it is the defendant, isn't it? Yes, Your Honor. And so isn't, doesn't that shift the burden? I mean, if we say there's a rebuttable presumption that the guideline sentence is reasonable, then it's up to the defendant to come forward and say, these are the reasons why it wasn't reasonable, isn't it? Yes. Defending. We may be playing a word game, but it sounds like there is a little burden shifting involved. It may be a word game, Your Honor, but the government submits that the defendant  because the government submits that now in this post-Booker territory, the burden is neither on the government nor on the defense. I mean, we're in sort of a new territory trying to examine the weight to be given the guidelines. Right. Do we need to decide that to decide this case, or can we decide that this sentence is reasonable with what we have in front of us? Oh, you need not resolve that question, Your Honor. In fact, based on the record, this Court can affirm that the district court that submitted the sentence was reasonable whether the defendant attempts to rebut a presumption or whether the government carries a burden in the first instance. And that's for several reasons. First of all, with respect to defendant's prior conviction for aggravated assault, and that is the third of his offenses, defendant does not raise any challenges to that conviction before this Court. And so counsel's arguments regarding the 13-level enhancement under the guidelines and the fact that defendant sustained a prior conviction for a crime of violence – I see I'm out of time. May I just conclude this? Yes. Thank you. The fact that defendant sustained a prior conviction for a crime of violence, none of that is in question before this Court. And that, along with the other factors that were presented to the district court, that the district court considered, the district court expressly rejected on the record defendant's arguments regarding cultural assimilation. So it's clear the district court did consider that. Ultimately, what this Court would have to do to reverse the sentence is to second guess the district court's decision. And the government submits that that is not warranted. And for those reasons, we'd ask that the sentence be affirmed. Thank you for your argument. Thank you, Your Honors. Just briefly, one of the last comments from the prosecutor was that this Court would have to second guess the district court's decision. And as I began at my opening remarks, you wouldn't have to second guess because in fact we know now that the district court's decision was based on erroneous information. And one of the arguments made by the prosecutor was that Mr. Cruz Perez doesn't challenge the facts set forth in the PSR of these convictions, just the way they were characterized. In fact, there are no facts set forth in the PSR regarding Mr. Cruz Perez's individual involvement in those offenses. It says that there were gang fights. Nowhere in the PSR are there any facts as to what Mr. Cruz Perez actually specifically individually did, except in one case he drove a car. The prosecutor also talked about the fact that, as Your Honor raised, that Mr. Cruz was offered a 30-month sentence, and that's one of the arguments that we raised in our brief, that the Court is required to consider that under the issue, under the 3553 factor of sentence disparities. And the prosecutor comments that the district court felt that that was not appropriate and rejected it. But in fact, the fact that that was an offer to a 1325 versus a 1326 is not relevant under 3553. Well, there are, you know, I see some, I see somewhat of what they're saying, and that there's a lot of regrets after things don't work out for people. I mean, it's the person that, you know, for example, the person that gets offered a voluntary manslaughter and then they fall on a murder, and then they say, well, you know, I'd like to go back to that determinate sentence instead of this life sentence, but there's, they don't get the benefit of the bargain if they walk on it. So. Well, I understand that, but under 3553A, one of the factors the Court's required to consider is unwarranted sentence disparities between defendants who have been convicted of similar conduct. And here we have someone who is not only similar, but in fact less guilty than other defendants because, as set forth in the briefs, he did not, in fact, have an aggravated felony. So the Court was required to consider the conduct, not the fact that it was to a different statute, and the fact that Mr. Cruz-Perez was similarly situated to 30-month sentence defendants. And there's just one thing that I also wanted to address, which was the prosecutor was saying that the guidelines should be presumptively reasonable because, in fact, they encompass all factors, and she specifically referred to role in the offense. And that's one of the ways in which the guidelines start out. First of all, they do not consider mitigating factors. They're based on aggravating factors, but then they skew upward, because in the guidelines you can get enhancements for the amount of drugs that you possess, your prior convictions, but when you talk about role in the offense, as the prosecutor does, the downward adjustments are all highly infrequent or intended to be rare. So again, the guidelines are skewing sentences upward and not allowing the defendants to consider their individual mitigating characteristics. All right. And unless there are no further questions. Thank you for your argument. This matter will now stand submitted. United States of America v. Salvador Alvarado, 05-50063, 05-50071. Now, this matter has been submitted without oral argument by stipulation of the parties requesting that they didn't want oral argument, but I have a question on the panel. They are going to submit supplemental letter briefs, I believe. So do we want to defer submission or do we want to submit it? And I think that there was also, we had asked them to address a case that's going to be argued before the U.S. Supreme Court. And are you here on this case? No, I'm sorry. I think we ought to defer. Okay. I agree with that. All right. And then we'll discuss internally how we'll calendar it to remind ourselves on that. So we'll, based on the parties' agreement not to have oral argument in this, which we granted their stipulation on that, and the fact that we'll be getting supplemental briefs and the fact that we're waiting for a Supreme Court case to be decided, submission will be deferred.
judges: Goodwin, B. Fletcher, Callahan